STEWART vs. MATHER and another.

VENDOR and BROKER.— *Whether broker who becomes purchaser may re-cover his commission.*

1. Where a sale is effected through the efforts of a broker, or through in-formation derived from him, so that he may be said to have been the procuring cause, the law leans to that construction of his contract with the vendor which will secure the payment of his commission, rather than to the contrary construction. Per DIXON, C. J.

2. Where terms of sale are fixed by the vendor, in accordance with which the broker undertakes to produce a purchaser, yet if, upon the pro-curement of the broker, a purchaser comes with whom the vendor negotiates, and thereupon voluntarily reduces the price of the prop-erty, or the quantity, or otherwise changes the terms of sale as propos-ed to the broker, so that a sale is consummated, or terms or conditions are offered which the proposed buyer is ready and willing to accept, in either such case the broker will be entitled to his commission at the rate specified in his agreement with his principal. Per DIXON, C. J.

Stewart vs. Mather and another.

3. It is a well settled general rule, that a person cannot at the same time be agent of the vendor to make sale, and purchaser of the property, and that in assuming the character of purchaser he abandons that of agent to effect the sale.

4. If, however, a broker, upon being promised a commission in case he should find a purchaser at a certain price, should immediately thereupon, in pursuance of such agreement, offer himself as a purchaser at the price named, and show himself ready and willing to consummate the purchase, *quære* whether he would not be entitled to the commission. Per DIXON, C. J.

5. Where a broker is to be paid a commission upon finding a purchaser at a certain stipulated price, and then (with the knowledge of the vendor) becomes the purchaser himself, either alone or jointly with another person; or where he is to be paid a commission upon producing a purchaser ready and willing to buy at such a price as may be agreed upon between the parties when brought together, and then himself (with the knowledge of the vendor) becomes the purchaser, either alone or jointly with another — in either case he is not entitled to the commission *unless it was the understanding between him and the vendor at the time of the sale,* that he should be entitled to it.

APPEAL from the Circuit Court for *Waushara* County.

The action was brought to recover $1,000 alleged to be due the plaintiff for services rendered by him to the defendants at their request, in 1868 and 1869, in and about the sale of certain real estate, known as " The Ranch," for which services defendants promised to pay, etc.

The answer, among other things, alleges that in the autumn of 1868, the defendants and one Kimball, being "joint owners and tenants in common" of said tract of land, contracted to sell and did sell and convey the same to one Ward and the present plaintiff; but it denies that plaintiff, as their agent or otherwise, sold said land, or rendered them any assistance or service in making the sale, or was ever employed by them so to do.

At the trial, after evidence bearing upon the issue had been introduced by both parties, the court gave the jury certain instructions, which are fully set out in the opinion. The following instructions, asked for by the defendants, were refused:

" 1. If the plaintiff contracted to find a purchaser for the land at fifteen dollars per acre, for a commission of five per cent., he cannot recover in this action unless he found a purchaser who was willing and ready to purchase at that price. 2. If he agreed to give his time and efforts in procuring a purchaser at the best possible price, such employment was inconsistent with a purchase by himself either alone or jointly with another. 3. If the defendants constituted the plaintiff their agent for the purpose of selling the land, or finding a purchaser therefor, it was plaintiff's duty to use his best endeavors to get the price which defendants had informed him they asked for the land. 4. If defendants agreed to pay plaintiff five per cent. of the purchase money on his procuring a purchaser of the land, and he purchased the same himself jointly with another person, then he cannot recover."

Verdict for the plaintiff; new trial denied; and defendants appealed from a judgment on the verdict.

*Geo. D. Waring* (with *S. U. Pinney*, of counsel), for appellant, argued, among other things, that it is a settled principle in the equity jurisprudence of this country, that a trustee is not at liberty to act or contract for his own benefit in regard to the subject of the trust, and that the advantage of all that he does about the trust property shall accrue to the *cestui que trust*, if the latter desire it. This fiduciary obligation is recognized as resting upon executors, administrators, guardians, *agents*, etc.; and an agent, undertaking any business for another, is disabled in equity from dealing in the matter of the agency upon his own account or for his own benefit. And though he have but a *mere ministerial power*, for the purpose of a sale, he is disabled from being a purchaser at the sale. His duty as vendor for others is to sell the property for the *highest* price, and his interest as purchaser for himself is to get it for the *lowest;* and these two relations are so essentially repugnant that a court of chancery never allows them to be united in the same person. *Keech v. Sanford,* and notes, 1 L. C. in Eq., 84–

97 ; *Fox v. Mackreth*, id., 172–222. If he was at work for, and acting for the defendant, he should be paid; but if for himself, he should not. Story on Agency, § 31 and notes; Dunlap's Paley, *33–37 and notes. It was the duty of the plaintiff to use his time, ability and experience in procuring a purchaser who would pay the best and highest price for the property; and the defendants, he claims, confided to him this trust. For this purpose alone are such agents or brokers employed. *Gardner v. Ogden*, 22 N. Y., 341, and cases cited. And a broker, or person acting as was the plaintiff, is clearly within the rule; for he may have acquired information in his character or employment as agent and solicitor of purchasers, which, in furtherance of his conflicting self-interest, he may have concealed or not exercised for the benefit of the defendants, who had employed him relying upon his knowledge, experience and integrity. *Michoud v. Girod*, 4 How. (U. S.), 554. And the inquiry is not, whether he has or has not concealed such information, or acted fraudulently, as it is enough that he had the opportunity. Id., 557 ; 1 Lead. Cases in Eq., 210, and cases cited. The transaction cannot be permitted to stand as an execution of an agency: not because *there is*, but because *there may have been*, fraud or unfair dealing.

Nor is the consequence of an agent taking the interest adverse to his principal in the matter to which the agency relates, confined to giving the principal the benefit of the contract, as in case of a purchase; but, in case of an agent to sell, in conformity with this salutary principle, in case of such a violation of duty or disavowal of his relation to his principal, he forfeits his right to his commission or compensation. Dunlap's Paley, 105 ; *Hurst v. Holding*, 3 Taunt., 32. A person cannot be agent for both purchaser and seller and earn a compensation from each, *unless by distinct arrangement between all concerned.* *Watkins v. Cousall*, 1 E. D. Smith, 65 ; *Dunlop v. Richards*, 2 id., 181 ; *Vanderpool v. Kearns*, id., 170. The reason is, that his duties toward the one conflict with the service which he

ought to have rendered to the other; the two employments being incompatible, as the faithful discharge of duty to the one would be a violation of duty to the other. Story on Agency, §§ 31 and 211, and notes; *Wright v. Dannah*, 2 Campb., 203; *Farebrother v. Simmons*, 5 B. & Ald., 333; *Pugsley v. Murray*, 4 E. D. Smith, 245. And so a broker who has acted for both parties in negotiating an exchange of real estate between them, without informing either that he was employed by the other, is not legally entitled to commissions for his services; and evidence in his behalf to show a custom among brokers to charge a commission in such cases, is inadmissible. *Farnsworth v. Hemmer*, 1 Allen, 494; *Pugsley v. Murray, supra.* Otherwise, if each have a knowledge of the fact, *and promise to pay*, or there is *a distinct arrangement to that effect by all concerned.* If this be sound law as to the capacity of an agent at the same time to serve two masters and claim compensation from each, *a fortiori* must it be so where he serves himself, and, in the same transaction in which their interests are opposed, claims compensation for serving another.

*Finch & Felker*, for respondent, argued that there was no fiduciary relation existing between the ·parties, the plaintiff having simply agreed to *find a purchaser;* and in support of the instructions given they cited *Lincoln v. McClatchie*, 36 Conn., 136; *Cook v. Fiske*, 12 Gray, 491; *Woods v. Stephens*, 46 Mo., 555; *Kock v. Emmerling*, 22 How. (U. S.), 69; 1 E. D. Smith, 150; 36 N. Y., 235; *Coles v. Trecothick*, 9 Ves., 234; *Morse v. Royal*, 12 id., 354; *Herman v. Martineau*, 1 Wis., 151.

DIXON, C. J. The jury, under the instructions of the court, have either found that the plaintiff, for the commission named, undertook to produce a party ready and willing to make the purchase at such price as might be agreed upon between the defendants and such purchaser when brought together, or they have found that the plaintiff, for a like commission, undertook to procure a purchaser at the price of fifteen dollars per acre

for the farm, and that when the purchaser and the defendants came together, the defendants consented to sell and did sell the property to the purchaser furnished by the plaintiff, at a less price. The former was the agreement as testified to by the plaintiff, the latter that to which defendants testified. There was no testimony tending to establish any other or different agreement between the parties than one or the other of these. The court instructed the jury, if they found from the evidence that the plaintiff contracted to find a purchaser at fifteen dollars per acre for a commission of five per cent., he could not recover unless he found a purchaser who was willing to pay that price, unless the defendants consented to sell, and did sell the property to the purchaser furnished by the plaintiff at a less price. The fact is undisputed that the sale was made at a price less than fifteen dollars per acre. The jury returned a verdict for the plaintiff for the five per cent. commission on the sum for which the land was sold.

The rule of law is not questioned, that a broker, employed to make a sale at a price satisfactory to the seller, is entitled to his commissions when he produces a party who makes the purchase. And it is in general enough, in such case, that the broker produces a party ready to make the purchase at a satisfactory price; and the principal cannot relieve himself from liability by capricious refusal to consummate the sale, or by a voluntary act of his own, disabling him from performance. *Moses v. Bierling*, 31 N. Y., 462; *Kock v. Emmerling*, 22 How. (U. S.), 69.

And where the price or other terms of sale are fixed by the seller, in accordance with which the broker undertakes to produce a purchaser, yet if, upon procurement of the broker, a purchaser comes with whom the seller negotiates, and thereupon voluntarily reduces the price of the thing to be sold, or the quantity, or otherwise changes the terms of sale as proposed to the broker, so that a sale is consummated, or terms or conditions offered which the party proposing to buy is ready and

agrees to accept, then and in either such case the broker will be entitled to his commissions at the rate specified in his agreement with his principal. The instruction above referred to was correct in law and properly given. *Kock v. Emmerling, supra;* *Woods v. Stephens*, 46 Mo., 555; *Lincoln v. McClatchie,* 36 Conn., 136. The authorities cited show that wherever the sale is effected through the efforts of the broker, or through information derived from him, so that he may be said to have been the procuring cause of it, his services are regarded as highly meritorious and beneficial, and the law leans to that construction which will best secure the payment of his commissions, rather than the contrary.

There can be no doubt, in the present case, that the plaintiff was the procuring cause of the sale which was made; but, in order to effect such sale, it seems he was obliged himself to become a part purchaser or joint purchaser of the property with the party whom he brought to the defendants as a person wishing to buy. He made no concealment, but the defendants were fully informed of this fact, and the negotiation resulting in the sale to himself and the party whom he had found thus willing to become joint purchaser with him, was openly carried on with the defendants. The defendants knew all the facts. The written contract of sale was made to the plaintiff and the purchaser procured by him, as joint purchasers. Under these circumstances, a question arises, and, as we think, a very delicate and important one, which is, whether a broker, thus employed to find a purchaser, can in any case himself become the purchaser in whole or in part of the property, and yet claim and recover the commissions agreed to be paid by the seller. The general principle will at once be acknowledged, that a person cannot at the same time be both agent for the seller to make the sale, and purchaser of the property to be sold. The relations are wholly incompatible with each other, and cannot be combined in the same person. The law will not permit it. Assuming the character of purchaser, the person so acting neces-

sarily abandons that of agent, and can claim nothing in the latter capacity in his negotiations with his former principal. Such is the undoubted general rule.  But the question presents itself, whether there may not be exceptions growing out of the peculiar nature of the agency, or certain special or limited agencies not falling within the reason of the rule, and so not within the rule itself.  The reason of the rule is very plain.  It is, that the interest of the party as purchaser, being adverse to that of his principal, supposing the agency still to continue, might and most naturally and ordinarily would lead to a violation of his duty as agent.  If a case can be presented, however, not within the reason of the rule, as of an agency limited to a time anterior to the purchase, or where the agency may be said to have expired, or the duties to have been performed, before the purchase takes place, to such a case it is presumed the rule would be held inapplicable.  If, for example, the principal says to the person whose services he wishes to engage, " I have a farm which I wish to sell, the price of which is $1,000, and for which, if you will find me a purchaser, I will give you a commission of five per cent. or $50," and the person addressed thereupon says, " I will find you a purchaser — I will become the purchaser myself on those terms; " if upon the proposition so made and accepted, the sale takes place, it would seem that the agent or broker, although himself appearing in the character of purchaser, would be entitled to his commission.  The agency being limited and special, confined to the procuring of a purchaser at the price specified, would appear to have ended when a purchaser was produced, and before the sale or transfer was made.  Pending the transfer and sale no fiduciary relation or agency would exist, but the principal would be acting for himself and on a footing of perfect equality with the purchaser, notwithstanding such purchaser might previously and for a moment of time have been considered as occupying the position of agent for the seller.  Such a case would not be within the reason of the rule, nor the mischief intended to be obviated by

it, and therefore the rule would seem to be inapplicable to it. The seller, having deliberately and of his own free will fixed the price of the farm and the commission he would pay in case a purchaser was found, could not with reason be heard to complain that the broker had himself become the purchaser; and his acceptance of the offer under such circumstances would altogether likely be construed as an assent on his part to the change of relation, and to the broker becoming the purchaser, within the meaning of the proposition made for one to be found. In such case the only point of any difficulty or doubt . would appear to be one of mere fact, and that, whether the seller intended to accept and did accept the offer as within the terms of his agreement to pay the commission. In the case supposed, there would seem to be not much room for doubt, but others arising under different circumstances might present very great difficulty.

Upon the question now under consideration we find but little or no direct authority in the books. We know of but one case in which it has been raised or discussed. In *Tower v. O'Neil*, 66 Pa. St., 332, one of two agents authorized in writing to sell certain real estate within a time for a price fixed by the owner in the writing, and for which he agreed to pay a commission of two per cent. and all that might be obtained over and above the price specified, said to the owner, when applying to have the written article of agreement given up to him, that he (the agent) would take the property at the contract price himself, rather than let the time run out. The offer was not accepted by the owner, and the parties came to a different arrangement, by which the article was surrendered upon payment of a certain compensation by the owner to the agents. In the suit by the agents to recover the full commissions, it was claimed that the proposition so made by one of the plaintiffs, to take the property himself, which he and his coplaintiff were authorized to sell, amounted to or was equivalent to a sale of it under the power. The court below was of the opin-

ion, and so instructed the jury, that the proposition could not be regarded as equivalent to a sale, because the instrument giving the power to sell did not contemplate a sale to the plaintiffs, or either of them — and public policy denied the right of an agent, under such a power, to sell to himself. The case on error turned upon another question, but the court, industriously avoiding a decision of this question of public policy, which it said was the one mainly discussed in the oral and printed argument, thus stated the position of counsel for the plaintiffs with respect to it, and to the instruction which was given and which they insisted was erroneous. " The plaintiffs contend that, under the stipulation contained in the power of sale, this instruction was erroneous, and that the rule of law which forbids an agent to sell to himself, or several joint agents to sell to one of their own number, has no application to this case. The plaintiffs were authorized to sell the property for seventy thousand dollars, and for their services in making the sale the defendant agreed to pay them a commission of two per cent., and the additional commission of all they might sell the property for above the sum of seventy thousand dollars. As the price which the defendant was to receive for the property was fixed and limited by the stipulations contained in the power of sale, irrespective of the amount for which it might be sold, the plaintiffs insist that, without any violation of the policy of the law, either of them had the right to purchase the property on the same terms they were authorized to sell it to a stranger, and that the offer of one of them to take it on those terms was equivalent to a sale under the power, and entitled them to the commission which the defendant agreed to allow them. But it seems to us that the question mainly discussed in the oral and printed argument, whether this case comes within the rule of law which forbids an agent to sell to himself, does not properly arise under the evidence." There is something in the manner of stating the proposition, and the anxiety manifested by the court not to deny its correctness but

to decide the case on other grounds, which amounts to a tacit, and one might almost say, a positive recognition of its correctness. And further on in the same opinion the court say: "It is clear that the offer, under the circumstances in which it was made, cannot be regarded as equivalent to a sale of the property under the power. · *It was not so intended, or understood by the parties at the time it was made.* There was no tender of the purchase money, nor was anything done by the plaintiffs, or either of them, in pursuance of the offer, to put them in a position *to treat it as equivalent to a sale under the power.* On the contrary, they voluntarily surrendered the power of sale, and accepted the money tendered by the defendant as a compensation for the services they had rendered. But if the offer to take the property was made in execution of the power of sale, as contended by the plaintiffs, the defendant was under no obligation to accept it; and his refusal of it did not render him liable for the commissions he agreed to pay for selling the property. The relation between the parties, under the power of sale, was that of principal and agent, and it could not be changed to that of vendor and vendee *without the consent of the defendant."* The implication from this language, and, as it seems to us, quite strong and clear, is, that if the defendant in that case had accepted the offer, and if it had appeared that the parties intended or understood at the time that it was a sale under the power, then in the opinion of the court the plaintiffs would have been entitled to their commissions. The acceptance of the offer under such circumstances would have been looked upon as a *consent* on the part of the defendant to the change of relation from agent to purchaser involved in the offer.

And there are still other authorities which seem to us to favor the same view. The general rule is, that a person cannot be agent for both purchaser and seller, and earn a. compensation from each. The reason of this rule is the same as that for the other, which, in general, forbids the agent or brok-

er from becoming the purchaser. But to this rule an exception arises whenever the reason fails. If the agency or office of the broker is merely to procure an interview between his two constituents or principals, who themselves negotiate and conclude the sale or exchange, the broker is entitled to his customary compensation from each. Not himself negotiating between or for either of the parties, nor in any degree influencing them to make the trade, it is immaterial that each was ignorant that he was acting for the other, and the broker will be entitled to his commissions from each. *Mullen v. Keetzleb*, 7 Bush, 253. A broker whose undertaking merely is to find a purchaser at a price fixed by the seller, or at a price which shall be satisfactory to the seller when he and the purchaser meet, is in reality only a "middleman," whose duty is performed when the buyer and seller are brought together, and as to whom the policy of the law which excludes double compensation has been considered inapplicable. Thus, in *Rupp v. Sampson*, 16 Gray, 398, it was held that if a middleman brings together a buyer and a seller, each of whom has agreed, without the knowledge of the other, to pay the middleman a commission on any contract which may be made between them, and a contract is made between them, in the making of which the middleman takes no part as agent for either, the conduct of the middleman in concealing from each his agreement with the other is not fraudulent, and is no defense to an action brought by him against either to recover the commission agreed upon. And in strict harmony with these decisions is the early one by this court in *Herman v. Martineau*, 1 Wis., 151.

These decisions tend very strongly to sanction the rule, that where the broker merely engages to find a purchaser at such price as may be agreed upon, if he presents himself as such purchaser, and the seller, with full knowledge of that fact, so receives and enters into negotiations with him, and a sale is consummated, the broker may recover his commissions. But the proof in such case should be clear, and the knowledge and

intent of the seller satisfactorily established in the mind of the jury. The testimony of the plaintiff in this case tended to show that the defendants did so understand the transactions, and that such was their intention as well as his own. In this the plaintiff seems to have been corroborated by some other circumstances, and had the question been submitted to the jury, it is possible, or may even be probable, they would have so found. But the question was not submitted to the jury, and for this defect in the instructions we are of opinion a new trial must be ordered. Without a finding by the jury that such was the intention of the parties, defendants as well as plaintiff, the presumption in a case of this kind must, we think, be, that the sale was consummated, not within, but without the agreement to pay the commission. The burden of overcoming this presumption rests upon the plaintiff. It is something like the case of an agent *negotiating* for both buyer and seller, where it is held he cannot have or earn compensation from each, unless by distinct arrangement between all concerned.

The instructions of the court below upon this branch of the case were as follows:

" The plaintiff claims that the defendants engaged him to sell the property, or find a purchaser therefor, at such a price as they were willing to sell the same, and to allow him a commission of five per cent.

" Upon this branch of the case you are first to ascertain from the testimony whether the defendants, or either of them, employed the plaintiff to sell the property, and, if they did, what price or commission he, the plaintiff, was to receive for such services if he should effect a sale.

" If, upon a full and candid review of the testimony, you find for the plaintiff on this proposition, you must next inquire whether the plaintiff did effect a sale of the property in question ; and if you find that the plaintiff did find a purchaser for the property, and a sale was effected to such purchaser, then, as a matter of law, so far as the question of commission is con-

cerned, I consider that it makes no difference whether the plaintiff became the purchaser of a part of said property or not. If he was employed to find a purchaser, for which he was to have a commission, if he did find a purchaser, he would be entitled to his commission, although he himself became the purchaser."

If to the words last quoted the court had added the further ones,— "provided you also find he became the purchaser under the agreement of the defendants to pay the commission, and with a knowledge or understanding to that effect on their part at the time of purchase,"— it is improbable that any exception could have been sustained to the instruction, or that the verdict, if for the plaintiff, could have been disturbed. As the case now stands, however, the judgment must be reversed, and a new trial awarded.

*By the Court.*— It is so ordered.