## STONE et al. v. COX. (No. 1368.)

(Court of Civil Appeals of Texas. El Paso. Nov. 2, 1922.)

1. Brokers ⊂⊃55(2)—Broker, who was procuring cause, entitled to commission, though sale for less price finally made through other broker.

A broker, who was the efficient and procuring cause of the sale, was entitled to his commission under a contract authorizing broker to procure a purchaser on terms satisfactory to owner, though the final negotiations were conducted and the transaction finally consummated through another broker, and the land was purchased for a price less than that at which it was offered purchaser by first broker.

2. Brokers ⊂⊃86(4)—Evidence held to prove broker procuring cause of sale.

In broker's action for commission, evidence held to sustain finding that the plaintiff was the efficient and procuring cause of the sale, though the final negotiations were conducted, and the transaction was finally consummated, through another broker.

Appeal from El Paso County Court at Law; J. M. Deaver, Judge.

Suit by Frank E. Cox against J. M. Richmond, in which the defendant impleaded Henry B. Stone. Judgment for plaintiff, and defendants appeal. Affirmed.

Winter, McBroom & Scott and M. Scarborough, all of El Paso, for appellants.
John T. Hill, of El Paso, for appellee.

HIGGINS, J. Appellee Cox brought this suit against Dr. J. M. Richmond to recover a commission of $530 upon the purchase price of property in the city of El Paso conveyed by Richmond to E. C. Davis. Cox alleged that Dr. Richmond listed the property with him for sale, agreeing to pay a commission of 5 per cent. upon the purchase price if plaintiff would procure a purchaser ready, willing, and able to buy for such price and upon such terms as should be agreed upon, that Cox showed the property to E. C. Davis and wife and negotiated with them and that defendant thereafter sold the property to Davis for $10,600.

Dr. Richmond answered and impleaded Henry B. Stone an adverse claimant of the commission. Stone answered claiming the commission.

Upon special issues the jury found that Dr. Richmond agreed to pay Cox 5 per cent. commission to procure the sale of the property; that Cox was the efficient and procuring cause of the sale to Davis; that Richmond listed the property with Cox to sell at the price of "12,000, subject to submission of other propositions."

Upon the findings judgment was rendered in favor of Cox. Richmond and Stone appeal.

The appellant Richmond in his brief states that he is a disinterested stake holder and requests consideration of his appeal only in event the judgment is reversed in favor of Stone; that, if the appeal of Stone is affirmed, then he (Richmond) is willing for the judgment of the lower court to stand.

Since the judgment as to Stone should be affirmed only those phases of the record are stated material to the determination between Cox and Stone of the right to the commission.

As between Cox and Stone the issue is

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

which one was the efficient and procuring cause of the sale. It is assigned as error that the finding that Cox was the efficient and procuring cause of the sale was contrary to the law and the evidence, and that a peremptory instruction should have been given in Stone's favor, the propositions advanced, being:

First: "Where two or more brokers are claiming a commission for the sale of the same property, that broker who first secures a written and binding contract of sale, and who actually consummates the sale, is entitled to the commission, to the exclusion of the other broker or brokers."

Second: "Where the uncontradicted evidence shows that one of the two contesting brokers for the same commission was the efficient and procuring cause of the sale, upon request, the court should instruct a verdict in favor of the broker shown by the uncontradicted evidence to have been the efficient and procuring cause of said sale."

Under the evidence adduced by the appellee, the propositions submitted and cases cited by appellant Stone have no application. It is undisputed that Dr. Richmond originally listed the property for sale with Cox. Cox testified:

That Dr. Richmond "named the price. And he said that he wanted $12,000 for it. 'But,' he says, 'You procure me a purchaser for it, on terms that are satisfactory to me; and, if you will do that quickly—I want to sell it, the house is vacant—why, I will give you a thousand dollars commission.' And I says: 'Well, Doctor, I would rather take the place, with 5 per cent., listed.' And then he says: 'I am going to pay 5 per cent., but I will tell you, like I did Leslie Reid, who is a patient of mine, also that if you will sell it quickly, I will pay you a thousand dollars.' And I asked him what payment he would take on the place; and he did not name the payment. He said the matter of the first payment was not any great consideration. He did not owe very much on it. And that, from a good man, he would take any reasonable payment; but from some people he would want it nearly all. And he asked me to report to him anything I—any offer I had."

Cox showed the property to Davis and wife, who became interested in purchasing the same, and they submitted an offer to purchase provided Dr. Richmond would accept in part payment a house owned by Davis, or an automobile. Cox testified he submitted these offers to Dr. Richmond who declined same. According to Cox's testimony he first showed the property to Davis, who immediately became interested in the purchase. In this he is corroborated by Davis. It seems that after the property had been listed with Cox, Dr. Richmond gave Stone an exclusive listing for a limited period of time and authorized him to sell for $10,000 net, to Richmond. When the exclusive listing was given, Dr. Richmond gave Stone the names of the other agents with whom the property had been listed, and Stone notified them by letter of his exclusive agency. By some oversight no notice to Cox was given of the exclusive listing with Stone. The property was advertised by Stone and in response to the same, Davis, not knowing it was the Richmond place, called upon Stone and Stone showed him the house. According to Stone's own testimony when they reached the place and started to go in Davis then told him he had already seen the place; Stone then told Davis he had the exclusive listing of the property. Davis thereafter continued his negotiations through Stone and entered into a contract to purchase for $10,600. This contract was not entered into until after the expiration of the exclusive listing period.

The purchaser, Davis, testified that Cox first brought the Richmond property to his attention and showed it and that he became interested; that after it was shown to him by Stone he continued his negotiations through Stone because Stone represented that Cox had no authority to sell. Pertinent portions of Davis' testimony are as follows:

"Mr. Stone represented to me there that Mr. Cox had no authority to sell this Dr. Richmond property, as inducing me to buy it. That is what induced me to trade with Mr. Stone.

"Yes, I heard Mr. Cox state that I asked him to submit a proposition to Dr. Richmond about exchanging to him my home, or my automobile, in part payment for his home. I asked Mr. Cox to submit a trade to Dr. Richmond. And the next day, I think it was, or shortly after that Mr. Cox reported. Mr. Cox said that he would submit the proposition to Dr. Richmond. He afterwards reported to me that Dr. Richmond said that he preferred not to make a trade, and that he wanted to get cash out of the property; that he had this other property to sell, and preferred not to make a trade.

"As to getting the price of this Dr. Richmond property reduced, Mr. Cox said that he had the place listed at $12,000, but he said that he felt that a lower price would get the place. He said that the doctor was anxious to sell it; and he said that he was not sure of that— about a lower price—but suggested that I submit an offer. Mr. Cox was the first man that called my attention to this Dr. Richmond place, and he was the first man that showed the place to me. * * *

"I dealt with Mr. Stone because Mr. Stone convinced me that he had the exclusive listing of the property, and because he made a definite proposition as to price. If Mr. Stone had not led me to believe that Mr. Cox was out of it, I would still have gone on dealing with Mr. Cox, or attempted to. If I could have gotten the property at the same price from Mr. Cox, I would have dealt with Mr. Cox."

[1] Upon the evidence indicated it became an issue of fact whether Cox was the efficient and procuring cause of the sale to Davis and if so he was entitled to the commission. It is true Dr. Richmond listed the place with

Cox for $12,000, but the inference from Cox's testimony is that this was a tentative price. The jury in effect so found. But whether it was or not the rule, as stated in Stewart v. Mather, 32 Wis. 349, quoted with approval in Graves v. Bains, 78 Tex. 92, 14 S. W. 256, is:

"Where the price or terms of the sale are fixed by the seller, in accordance with which the broker undertakes to produce a purchaser, yet if upon procurement of the broker a purchaser comes with whom the seller negotiates and thereupon voluntarily reduces the price of the thing to be sold, or the quantity, or otherwise changes the terms of sale as proposed to the broker so that the sale is consummated, or terms or conditions offered which the party proposing to buy is ready and agrees to accept, then in either such case the broker will be entitled to his commissions."

[2] In the present case the final negotiations and sale were not conducted by the owner but by another broker, but the right to the commission of the first broker, who procured the purchaser and whom the evidence discloses was the primary and procuring cause of the sale, is not affected and cannot be defeated by the fact that the final negotiations were conducted and the transaction finally consummated through another broker, and this is true, even though the terms of the first negotiations may have been varied.

Under the authorities in this state and elsewhere, the jury's findings are supported by the evidence, and upon same the judgment in appellee's favor was properly rendered. Graves v. Bains, 78 Tex. 92, 14 S. W. 256; Bellis v. Hann (Tex. Civ. App.) 157 S. W. 429; Moye v. Park (Tex. Civ. App.) 216 S. W. 206; Hamburger v. Thomas (Tex. Civ. App.) 118 S. W. 774; Waurika, etc., v. Ellis (Tex. Civ. App.) 232 S. W. 366.

Other propositions are advanced by Stone, based upon the rule that a recovery cannot be had upon quantum meruit where the suit is based upon an express contract, and that, in suit upon an express contract, the evidence must support the contract alleged. These rules have been complied with by appellee. He alleged and has proven an express contract. The recovery is not upon quantum meruit. As to the theory that there was a variance because Cox testified that the property was listed with him at $12,000, and the proof shows a sale at $10,600, this is unimportant, because Cox also testified that the owner told him:

"You procure a purchaser for it on terms that are satisfactory to me. * * * And he asked me to report to him anything I—any offer I had."

This proof and the last finding by the jury, corresponds with and supports the allegation of the petition that Cox—

"should procure a buyer for said property who was able, ready, and willing to purchase said property at such sum as defendant should agree to take and on such terms as should be agreed upon, that defendant would pay plaintiff the sum of 5 per cent. upon such amount as defendant should agree to take for said property."

Finding no error in the appeal of Stone the judgment is in all respects affirmed, without any consideration of the merits of the appeal by Richmond.